# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: ) | |
| ) | |
| DERRICK J. MARTIN, JR. ) | Case No. 18-14487 KHT |
| SSN: XX-XXX-1032 ) | |
| ) | Chapter 7 |
| Debtor. ) | |
| ) | |
| DAVID V. WADSWORTH, Chapter 7 ) | |
| Trustee ) | Ad. Pro. No. 18-01413 KHT |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| TWO RINGS PROPERTY ) | |
| MANAGEMENT, LLC, a Colorado Limited ) | |
| Liability Company ) | |
| ) | |
| Defendant. ) | |

### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE, FOR JUDGMENT ON THE PLEADINGS

David V. Wadsworth, Chapter 7 Trustee, by and through his undersigned counsel, files his Motion for Summary Judgment pursuant to F.R.B.P. 7056 and Fed.R.Civ.P. 56, or in the Alternative, for Judgment on the Pleadings pursuant to Fed.R.Civ.P. 12(c), and as grounds therefore states as follows:

### I. BACKGROUND

Derrick J. Martin, Jr. ("***Debtor***"), filed his voluntary petition for relief under Chapter 7 of the Bankruptcy Code on May 18, 2018 ("***Petition Date***"). Plaintiff David V. Wadsworth serves as chapter 7 trustee in the Debtor's case ("***Trustee***" or "***Plaintiff***"").

The Trustee commenced this Adversary Proceeding by filing his Complaint on December 5, 2018 ("***Complaint***"). The Complaint sets forth three (3) Claims for Relief, all related to the

1

real property in which the Debtor resides, located at 23593 East Chenango Place, Aurora, CO 80016 ("**Chenango Property**").

The First Claim for Relief seeks to avoid the transfer of and recover the Debtor's interest in the Chenango Property as a fraudulent transfer pursuant to 11 U.S.C. §§ 548(a)(1)(A) and 550(a). The Second Claim for Relief seeks to avoid the transfer of and recover the Debtor's interest in the Chenango Property as a fraudulent transfer pursuant to 11 U.S.C. §§ 548(a)(1)(B) and 550(a), and the Third Claim for Relief seeks Court authority to sell the Chenango Property pursuant to 11 U.S.C. § 363(h).

In response to the Complaint, Defendant Two Rings Property Management, LLC ("**Defendant**" or "**Two Rings**") filed an extremely limited Answer, consisting of four (4) total numbered paragraphs. No affirmative defenses were pled.

The Answer recites (i) that the Debtor filed his Petition in good faith; (ii) that at no relevant time did the Debtor make any fraudulent conveyance to Two Rings, within the meaning of 11 U.S.C. §§ 548 and 550; (iii) that the Chenango Property is the Debtor's residence; and (iv) that the Debtor "reasserts his homestead exemption in the Property" (Answer, ¶¶ 1-4). Nothing more was pled, and Defendant did not respond to each of the allegations set forth in the Complaint.

After receipt of this sparse Answer, undersigned counsel contacted counsel for Defendant (who also serves as counsel for the Debtor), requesting that an Amended Answer, responsive to the allegations set forth in the Complaint and as required by Fed.R.Civ.P. 8, be filed. Defendant declined, stating that the Answer "fairly responded" to the substance of the allegations, and asserting that the Answer met the requirements of Rule 8. <u>See</u>, email exchange attached hereto

as Exhibit A.[1] Two Rings has never amended its Answer and in its Answer, it did not assert a general denial to all allegations of the Complaint, as provided for in Fed.R.Civ.P. 8(b)(3).

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Water Pik, Inc. v. Med-Systems, Inc.*, 848 F.Supp.2d 1262, 1270 (D. Colo. 2012), citing Fed.R.Civ.P. 56(a); See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). Therefore, a disputed fact is "material" only if, under the relevant substantive law, it is essential to the proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party. *McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).

As to Motions for Judgment on the Pleadings, the standard under Fed.R.Civ.P. 12(c) is the same as that which is applied in the contest of a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6). *Colony Ins. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012). The court must accept all facts pleaded by the non-moving party as true and grants all reasonable inferences from the pleadings in favor of the non-moving party. *Id*. A motion for judgment on the pleadings should not be granted unless the movant has clearly established that there are no material facts to be resolved and that the movant is entitled to judgment as a matter of law. *Id*. The court does not accept as true legal conclusions that are couched as factual allegations and

---

[1] Exhibit A has been properly redacted to omit any discussion between counsel not pertinent to this issue.

instead, determines whether the factual allegations "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

### III. FACTS

**A. Plaintiff's Statement Pursuant to L.B.R. 7056-1(b)(4).**[2]

1. On March 15, 2013, the Debtor caused Articles of Organization for Defendant Two Rings Property Management, LLC to be filed with the Colorado Secretary of State. See Complaint, Exhibit A.

2. On March 15, 2013, Mrs. Martin executed the Operating Agreement of Two Rings as its sole member. See Complaint, Exhibit B.

3. At the time of its formation, Two Rings possessed no assets.

4. On December 28, 2016, the Debtor and his spouse Alexa S. Martin ("***Mrs. Martin***") purchased the Chenango Property, as joint tenants.

5. On December 28, 2016, the Debtor and Mrs. Martin also executed (but did not record) a Quitclaim Deed ("***Quitclaim Deed***") transferring complete ownership of the Chenango Property to Two Rings, allegedly for ten dollars ($10.00). See Complaint, Exhibit C.

6. On December 28, 2016, the day the Quitclaim Deed was executed, the Debtor was a defendant in a lawsuit brought against him and others by Jeffrey Petty and Kathleen Petty ("***Petty's***"), which lawsuit was pending in Adams County (Colorado) District Court, case no. 15CVC30528 ("***Lawsuit***").

7. On February 15, 2017, judgment was entered in favor of the Petty's and against the Debtor in the Lawsuit ("***Petty Judgment***").

---

[2] As argued below, since Defendant did not respond to each allegation of the Complaint as required by Fed.R.Civ.P. 8(a)(3), the terms of Fed.R.Civ.P.8(b)(6) control, and "[A]n allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied." Fed.R.Civ.P. 8(a)(6). Thus, Plaintiff takes the allegations set forth in the Complaint and has reiterated them herein as a portion of his Statement of Facts.

8. Two days later and on February 17, 2017, the Quitclaim Deed transferring title of the Chenango Property from the Debtor and Mrs. Martin to Two Rings was recorded with the Arapahoe County Clerk and Recorder's office ("**Chenango Property Transfer**").

9. The Chenango Property Transfer was made within two years prior to the Petition Date.

10. The Chenango Property Transfer was made with actual intent to hinder, delay, or defraud the Petty's, persons to whom the Debtor was or became, on or after the date that the Chenango Property Transfer was made, indebted.

11. Actual fraudulent intent is shown by, among other things, the following:
 a. No consideration was paid to the Debtor in exchange for executing the Quitclaim Deed;

 b. The Debtor testified at his Meeting of Creditors, conducted pursuant to 11 U.S.C. § 341(a), that he transferred his interest in the Chenango Property to Two Rings because he was being sued;

 c. Two Rings conducts no business vis-à-vis the Chenango Property;

 d. The Debtor and his family reside at the Chenango Property, and have done so continuously since the Chenango Property Transfer occurred; and

 e. The Debtor and Mrs. Martin, not Two Rings, executed a deed of trust in favor of Great Western Bank encumbering the Chenango Property.

12. On the date of the Chenango Property Transfer:

 a. The Debtor was insolvent;

 b. The Debtor was engaged in business or a transaction, or was about to engage in business or transactions, for which any property remaining with the Debtor was an unreasonably small capital; and

 c. The Debtor intended to incur, or believed that it would incur, debts that would be beyond his ability to pay as such debts matured.

13. The amount of the Petty's Judgment, as evidenced by their timely proof of claim filed in the Debtor's Case and the Debtor's response to Schedule F, Part 2, Question 4.9, reflects that on the date of the Chenango Property Transfer, he was indebted to the Petty's in the amount

of $1,563,354.13 (the Debtor actually listed the Petty Judgment at $1,563,355.00, and did not list that debt as either disputed, contingent or unliquidated. See, Dckt. No. 1, p. 31).

14. Once the Chenango Property is recovered pursuant to the Claims for Relief set forth herein, the Debtor's interest in the Chenango Property is preserved for the estate pursuant to 11 U.S.C. § 550, and the Plaintiff will have a one-half interest in and Two Rings will have a one-half interest in the Chenango Property.

15. The legal description for the Chenango Property is as follows:

LOT 32, BLOCK 1, TOLLGATE CROSSING SUBDIVISION FILING NO. 10, COUNTY OF ARAPAHOE, STATE OF COLORADO.

The Real Property or its address is commonly known as 23593 East Chenango Place, Aurora, CO 80016.

16. Partition in kind of the Chenango Property between the Debtor's estate and Two Rings is impracticable.

17. The sale of Plaintiff's undivided interest in the Chenango Property would realize significantly less for the bankruptcy estate than a sale of the Chenango Property free of the interests of Debtor and Two Rings.

18. The benefit to the Debtor's bankruptcy estate from the sale of the Chenango Property free of the interests of the Debtor and Two Ring's interests outweighs the detriment, if any, to Debtor and Two Rings.

19. The Chenango Property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

**B. Plaintiff's Statement of Burden of Proof.**

The Trustee bears the burden of proving, by a preponderance of the evidence, all statutory elements of the Section 548(a)(1)(A) and (a)(1)(B) fraudulent transfer claims. The determination of whether a debtor intended to hinder, delay, or defraud creditors in transferring

property is a question of fact. *In re Crystal*, 513 B.R. 413 (Bankr. D. Idaho 2014). "The entity seeking to avoid a transfer under § 548(a)(1)(B) bears the burden of proof by a preponderance of the evidence." *In re Adam Aircraft Indus., Inc.*, 493 B.R. 834, 845 (Bankr. D. Colo. 2013), aff'd, 510 B.R. 342 (10th Cir. BAP (Colo.) 2014), aff'd, 805 F.3d 888 (10th Cir. 2015).

When considering a claim brought pursuant to 11 U.S.C. § 550(a), it is the Trustee who bears the burden of proving that the Transfers were transferred to the Defendant as the initial transferee. *In re Twin Peaks Fin. Servs., Inc.*, 519 B.R. 549, 558 (Bankr. D. Utah 2014), aff'd sub nom. *In re: Twin Peaks Fin. Servs., Inc.*, 562 B.R. 519 (D. Utah 2016).

When a Summary Judgment Motion is filed, "The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

## IV. ARGUMENT

**A. THE TRANSFER OF THE DEBTOR'S INTEREST IN THE CHENANGO PROPERTY WAS FRAUDULENT WITHIN THE MEANING OF 11 U.S.C. § 548(a)(1)(A).**

11 U.S.C. § 548 (a)(1)(A) provides:

> **(a)(1)** The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
> **(A)** made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted;

**11 U.S.C. § 548 (a)(1)(A)**.

7

In the case at bar, there is no dispute that the Debtor was being sued by the Petty's when the Debtor executed the Quitclaim Deed on December 28, 2016. Indeed, the existence of the Lawsuit is listed in the Debtor's Statement of Financial Affairs ("*SOFA*"), in response to Part 4, Question 9 of the SOFA, a copy of which is attached hereto as Exhibit B.[3] When the Petty Judgment was entered against the Debtor he took immediate steps, prior to the date upon which the Petty Judgment was to become final (which, under Colorado law, would have occurred 49 days after its issuance, per C.A.R. 4(a)), to record the Quitclaim Deed and effectuate the Chenango Property Transfer from the Debtor and Mrs. Martin to Two Rings, for no consideration, and so as to place the Debtor's interest in the Chenango Property out of out the reach of the Petty's for judgment collection purposes. The Petty Judgment was issued on Wednesday, February 15, 2017, and only one intervening business day passed between that date and the date that the Quitclaim Deed was recorded on Friday, February 17, 2017.

This case is emblematic of what is considered a classic example of a fraudulent transfer. Direct evidence of fraudulent intent is rarely available, *Fifth Third Bank v. Morales*, 2017 WL 6492108, at *2 (D. Colo. Dec. 19, 2017) but there exists allegations in Plaintiff's Complaint to which no response was provided so that they are, as a matter of law, deemed admitted. Fed.R.Civ.P. 8(b)(3) and (b)(6). [4]

Presuming for argument's sake that the Court determines the Answer does in fact generally deny the allegations of the Complaint (which did not occur per Fed.R.Civ.P. 8(b)(2) and 8(b)(3)), the requisite badges of fraud present herein, coupled with the lack of Affirmative Defenses, compel the conclusion that the Chenango Property Transfer must be avoided. Since "[I]ntent to hinder, delay, or defraud creditors is rarely admitted by a debtor…, a court may consider circumstantial evidence establishing badges of fraud." *In re Kendall*, No. 10-29564

---

[3] The Court can take judicial notice of its file, per FRE 201.
[4] Even after this deficiency was pointed out to its counsel, Two Rings rejected the opportunity to cure this deficiency and opted to stand on its Answer, as submitted.

MER, 2012 WL 3202689, at *4 (Bankr. D. Colo. Aug. 6, 2012), aff'd, 491 B.R. 191 (10th Cir. BAP (Colo.) 2013, aff'd 565 F. App'x 714 (10th Cir. 2014) (quoting, *Taylor v. Rupp* (*In re Taylor*), 133 F.3d 1336, 1338–39 (10th Cir.1998)). Per *Kendall*:

> Relevant factors include whether the transfer was to an insider; whether the debtor retained possession or control of the property after the transfer; concealment of the transfer; pending or threatened litigation against the debtor at the time of transfer; a transfer of substantially all of the debtor's assets; absconding by the debtor; removal or concealment of assets; reasonably equivalent value in exchange for the transfer; the debtor's insolvency at the time of the transfer; the proximity in time of the transfer to the incurrence of a substantial debt; and a transfer of substantial business assets to a lienor followed by a subsequent transfer of such assets to an insider of the debtor. Transfers to family members are subjected to particularly close scrutiny. The relationship of the parties in conjunction with other circumstances often provides compelling evidence of fraud.

*Id.* (citations omitted).

Here, the Chenango Property Transfer was made to Two Rings, a non-statutory insider of the Debtor and an entity for which Mrs. Martin served as manager and sole member. Clearly, the Debtor and Mrs. Martin maintained control over the Chenango Property and have, at all times subsequent to its transfer, used the Chenango Property as their principal residence. While the Chenango Property Transfer is a matter of public record as a recorded document, the Debtor was being threatened with, and was embroiled in, litigation with the Petty's at the time of the Chenango Property Transfer.

The proximity in time of the Chenango Property Transfer to the date of the Petty Judgment was virtually simultaneous, and the Debtor had the Quitclaim Deed executed and unrecorded, awaiting the outcome of the Lawsuit in case he needed to record it, which is precisely what occurred when the adverse Petty Judgment was entered. Of course, the Debtor's unrebutted testimony at his §341 Meeting confirms and buttresses this chronology (Complaint, ¶19(b) - "The Debtor testified at his Meeting of Creditors, conducted pursuant to 11 U.S.C. §

9

341(a), that he transferred his interest in the Chenango Property to Two Rings because he was being sued.").

The alleged consideration for transferring the Chenango Property to Two Rings was supposedly $10.00, but there is no evidence that even that paltry sum was ever paid. When the Debtor and Mrs. Martin purchased the Chenango Property on December 28, 2016, they paid $463,935.00 for what was then a new home constructed just for the Martins. See, Oakwood Homes, LLC Sales Agreement (Ranch House at Tollgate Crossing), attached hereto as Exhibit C. While the Chenango Property Transfer was made to Two Rings, which as an artificial entity cannot be a family member, there is no dispute that Mrs. Martin is the member and manager of Two Rings, and she is the spouse of the Debtor. The terms of 11 U.S.C. § 101(31) state that the term "insider" of an individual debtor includes a relative of the debtor, and a corporation of which the debtor is a director, officer, or person in control. Since Two Rings is managed by Mrs. Martin, and the Debtor was not designated as a manager of that entity, he cannot be a statutory insider of Two Rings.[5]

However, the inquiry does not end there. Under established Tenth Circuit precedent, Two Rings clearly qualifies as a non-statutory insider of the Debtor. In this regard, the Tenth Circuit has opined:

> In ascertaining insider status, then, courts have looked to the closeness of the relationship between the parties and to whether any transactions between them were conducted at arm's length." *In re Krehl,* 86 F.3d 737, 742 (7th Cir.1996). A leading treatise supports this view. 5 *Allen N. Resnick & Henry J. Sommer, Collier on Bankruptcy*, ¶ 547.03[6] (15th rev. ed. 2008) ("The consideration of insider status focuses on two factors: (1) the closeness of the relationship between the parties; and (2) whether the transaction was negotiated at arm's length."). Courts have also assessed the presence or absence of control of the debtor by the creditor and whether the creditor has access to inside information. *See Kunz,* 489 F.3d at 1079; *Krehl,* 86 F.3d at 743. The inquiry then is whether there is a close relationship and whether there is anything

---

[5] However, the Trustee notes that the Debtor himself asserted, under oath, that he possessed an interest in Two Rings on the Petition Date. See, Schedule B, Part 4, Response to Question 19.

> other than closeness to suggest that any transactions were not conducted at arm's length. *See Krehl,* 86 F.3d at 742.

*Anstine v. Carl Zeiss Meditec AG (In re U.S. Medical, Inc.),* 531 F.3d 1272, 1277–80 (10th Cir.2008) (citing, *inter alia, Rupp v. United Security Bank (In re Kunz),* 489 F.3d 1072 (10th Cir.2007)).

The extreme closeness in the relationship between the Debtor and Two Rings is self-evident. After all, the Debtor formed Two Rings (Complaint, Exhibit A), and prior to the Chenango Property Transfer Two Rings was an unfunded LLC. The Debtor's non-filing spouse Mrs. Martin is the sole member of Two Rings (Complaint, Exhibit B). Further, the name "Two Rings" refers to the Debtor's two Super Bowl rings he earned while playing in the National Football League, and the phrase "Two Rings" is also a moniker which the Debtor consistently utilized pre-petition when naming his various business ventures. See, Exhibit B (SOFA, Response to Part 7, Question 18; Response to Part 11, Question 27; Schedule B, Response to Part 4, Question 19).

Analyzing whether the Chenango Property Transfer from the Debtor to Two Rings was an arm's length transaction, no serious argument advancing that position can be made. There was nothing arm's length which occurred here. Rather, the Debtor and Mrs. Martin waited for the adverse Petty Judgment to enter, prepared and executed the Quitclaim Deed well in advance of that date, and recorded the Quitclaim Deed almost immediately after the Petty Judgment entered.

When the Chenango Property was purchased on December 28, 2016, the Debtor and Mrs. Martin made a down payment in the amount of $111,387.79. A copy of Chenango Property "Closing Cost Details" sheet is attached hereto as Exhibit D.[6] Despite this fact, the stated consideration for transferring the Martin's newly purchased home, which home itself was newly

---

[6] See, Proof of Claim No. 5 filed in the Debtor's Case by Great Western Bank. The Debtor and Mrs. Martin financed the remainder of the Chenango Property purchase via a $350,000 loan from Great Western Bank.

11

constructed, was only $10.00. There were no negotiations here, just the transfer of title from the Debtor and Mrs. Martin individually to their Two Rings entity, immediately after the Petty Judgment entered. Consequently, Two Rings qualifies as a non-statutory insider of the Debtor, bolstering the conclusion that the Chenango Property Transfer occurred with the intent to hinder, delay or defraud the Debtor's creditors, namely the Petty's.

The unrebutted allegations within the Complaint further establish that (i) Two Rings conducts no business vis-à-vis the Chenango Property; and (ii) the Debtor and Mrs. Martin, not Two Rings, executed a deed of trust in favor of Great Western Bank encumbering the Chenango Property (Complaint, ¶¶ 19(b), (c) and (e)).[7] These facts overwhelmingly establish that the Chenango Property Transfer was fraudulent within the meaning of 11 U.S.C. § 548(a)(1)(A), and that such Transfer must be avoided (and preserved for the estate pursuant to 11 U.S.C. § 550).

    **B.    THE TRANSFER OF THE DEBTOR'S INTEREST IN THE CHENANGO PROPERTY WAS FRAUDULENT WITHIN THE MEANING OF 11 U.S.C. § 548(a)(1)(B).**

The very same facts which compel the conclusion that the Chenango Property Transfer constitutes a fraudulent transfer under the actual fraud provisions of 11 U.S.C. § 548(a)(1)(A), also compel the conclusion that the Chenango Property Transfer must be avoided as a transfer made for less than reasonable equivalent value, within the meaning of 11 U.S.C. § 548(a)(1)(B). Section 548 provides, in pertinent part, that:

> a trustee may avoid a transfer if the debtor:
>
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

---

[7] Proof of Claim No. 5 filed by Great Western Bank contains a copy of the executed Deed of Trust. A copy of that Proof of Claim is attached hereto as <u>Exhibit F</u>.

12

>> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
>
>> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
>
>> (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

**11 U.S.C. § 548(a)(1)(B)**.

The Chenango Property Transfer occurred on February 17, 2017. Prior to that date, the Debtor owned an equal, one-half interest in the Chenango Property. The Debtor's Petition Date was May 18, 2018, less than two years after the Transfer took place. The Debtor did not receive anything of value from Two Rings in exchange for executing the Quitclaim Deed and instead, simply gave away his interest in the Chenango Property for no consideration. And, at the time the Chenango Property Transfer was effectuated, the Petty Judgment had just been entered against him, in the amount of $1,563,354.13. See, Petty Proof of Claim, Part 2, attached hereto as Exhibit E.

The Complaint also recites that at the time of that Transfer, (i) the Debtor was insolvent; (ii) the Debtor was engaged in business or a transaction, or was about to engage in business or transactions, for which any property remaining with the Debtor was an unreasonably small capital; and (iii) the Debtor intended to incur, or believed that he would incur, debts that would be beyond his ability to pay as such debts matured. (Complaint, ¶¶ 26 (a)-(c)).

In its Answer, Two Rings failed to dispute any of these allegations and thus, they are deemed admitted per Fed.R.Civ.P. 8(b)(6). Taken together, these facts unequivocally establish the merits and validity of the Trustee's Second Claim for Relief seeking to avoid the Chenango Property Transfer based upon a theory of a constructive fraudulent transfer, and the judgment

must enter in favor of the Trustee and against Two Rings on the Second Claim for Relief. *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 535, 114 S. Ct. 1757, 128 L.Ed.2d 556 (1994).[8]

### C. THE CHENANGO PROPERTY SHOULD BE SOLD PURSUANT TO 11 U.S.C. § 363(h).

The Chenango Property is a single family residence in Aurora, Colorado. Paragraphs 31-34 of the Trustee's Complaint recite:

> 31. Partition in kind of the Chenango Property between the Debtor's estate and Two Rings is impracticable.
>
> 32. The sale of Plaintiff's undivided interest in the Chenango Property would realize significantly less for the bankruptcy estate than a sale of the Chenango Property free of the interests of Debtor and Two Rings.
>
> 33. The benefit to the Debtor's bankruptcy estate from the sale of the Chenango Property free of the interests of the Debtor and Two Ring's interests outweighs the detriment, if any, to Debtor and Two Rings.
>
> 34. The Chenango Property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

Complaint, ¶¶ 31-34.

In its Answer, Two Rings never contested any of the above well-pled elements required in order to obtain an order authorizing the sale of the Chenango Property pursuant to 11 U.S.C. § 363(h), and no defenses to this Claim for Relief were raised. As stated above, Fed.R.Civ.P. 8(b)(6) mandates that the failure to deny the allegations in a Complaint equates to an admission thereof. Thus, there is no genuine dispute as to the facts regarding whether the sale of the Chenango Property under § 363(h) is warranted or appropriate, and judgment must enter in favor of the Trustee and against Two Rings on the Trustee's Third Claim for Relief.

---

[8] The Trustee also pled, as part of his First and Second Claims for Relief, that the avoided and recovered Chenango Property Transfer must be preserved for the benefit of the estate pursuant to 11 U.S.C. § 550. Section 550(a) provides (in part), that to the extent that a transfer is avoided under § 548, "the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from," among others, "the initial transferee of such transfer." 11 U.S.C. § 550(a).

14

As a single family home, partition of the Chenango Property is simply not practicable. It cannot be split. Further, "[N]umerous courts take judicial notice that the sale of the estate's undivided interest in real property would realize significantly less than a sale free of the co-owner's interest." *In re Harrison*, 503 B.R. 835, 847 (Bankr. N.D. Okla. 2013).

In determining whether to authorize the sale of co-owned property pursuant to 11 U.S.C. § 363(h), the Court must also balance the benefit to the estate of the sale of the Chenango Property free of the Defendants' interests against any detriment to the Defendant Two Rings. **11 U.S.C. § 363(h)(3)**. The benefit to the estate of the sale of the Chenango Property free and clear of the Defendants' interests is substantial. The administration of the estate's interest in the Chenango Property will allow the Trustee to make an increased distribution to unsecured creditors in this case. Two Rings has made make no argument and has pled no defense asserting that such a sale would cause a detriment to its interests. Practically speaking, a sale will allow Two Rings to essentially be made whole because it will receive the full value of its remaining one-half interest in the Chenango Property, after the § 363(h) sale has occurred.

There is no known use of this residential property in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power. Two Rings has made no claim to the contrary. These facts, taken together, compel the conclusion that Summary Judgment (or Judgment on the Pleadings) should be granted in favor of the Trustee, and that an order should enter authorizing the Trustee to sell the Chenango Property pursuant to 11 U.S.C. § 363(h).

    **D.    ALL ALLEGATIONS IN PLAINTIFFS' COMPLAINT ARE DEEMED ADMITTED PURSUANT TO FED.R.CIV.P. 8(b)(6), AND PLAINTIFF IS THUS ENTITLED TO AN ORDER GRANTING HIM JUDGMENT ON THE PLEADINGS PURSUANT TO FED.R.CIV.P. 12(c).**

Fed.R.Civ.P. 8(a)(3) required Two Rings to respond to each allegation of the Complaint, but it failed to do so, even after being apprised of its deficiency and being provided an

15

opportunity to correct its error. See, Exhibit A. Denials may be general or specific. Fed.R.Civ.P. 8(b)(3) restricts the availability of general denials to instances in which the responding party "intends in good faith to deny all the allegations of a pleading—including the jurisdictional grounds." Id. Here, Two Rings did not contest the jurisdiction of the Court and did not issue a general denial within the meaning of Rule 8(b)(3).

Rule 8 also contemplates that in most situations, a defendant "does not intend to deny all the allegations," and thus, that party "must either specifically deny designated allegations or generally deny all except those specifically admitted." Id. Rule 8 also mandates that every denial must "fairly respond to the substance of the allegation." Fed.R.Civ.P. 8(b)(2). Since the Two Rings Answer failed to comply with these requirements, the terms of Fed.R.Civ.P. 8(b)(6) dictate that "[A]n allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied." Fed.R.Civ.P. 8(a)(6).

In turn, Fed.R.Civ.P. 12(c) provides: "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). To prevail on a Rule 12(c) motion, "the moving party [must] demonstrate that no material fact is in dispute and that it is entitled to judgment as a matter of law." *Schuler v. PricewaterhouseCoopers, LLP*, 514 F.3d 1365, 1370 (D.C. Cir. 2008) (internal quotation marks omitted). This standard is similar to the standards referenced above related to Summary Judgment pursuant to Rule 56, and since sufficient grounds to grant that relief exist based upon the admitted factual allegations set forth in the Complaint (as set forth above in Section III), they also provide a firm foundation and basis to grant Plaintiff's Motion for Judgment on the Pleadings.

WHEREFORE, for all reasons set forth herein, Plaintiff respectfully requests that the Court (i) grant Plaintiff's Motion for Summary Judgment or in the Alternative, for Judgment on

the Pleadings; (ii) enter Judgment in Plaintiff's favor and against Defendant Two Rings Property Management, LLC on all Claims for Relief; (iii) preserve the avoided transfer of the Chenango Property for the benefit of the estate; (iv) authorize the sale of the Chenango Property pursuant to 11 U.S.C. § 363(h); (v) award the Trustee the attorney's fees and costs incurred; and (vi) for any such other and further relief as this Court deems just and proper.

Dated: May 17, 2019　　　　　　　　**SPENCER FANE LLP**

　　　　　　　　　　　　　　　　　　By:　/s/ David M. Miller
　　　　　　　　　　　　　　　　　　　　David M. Miller, #17915
　　　　　　　　　　　　　　　　　　　　1700 Lincoln Street, Suite 2000
　　　　　　　　　　　　　　　　　　　　Denver, CO 80203
　　　　　　　　　　　　　　　　　　　　Ph. (303) 839-3800
　　　　　　　　　　　　　　　　　　　　Fax (303) 839-3838
　　　　　　　　　　　　　　　　　　　　e-mail: dmiller@spencerfane.com

ATTORNEYS FOR DAVID V. WADSWORTH, CHAPTER 7 TRUSTEE

## CERTIFICATE OF SERVICE

The undersigned certifies that on May 17, 2019, I served via email and by prepaid first class mail a copy of **PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE, FOR JUDGMENT ON THE PLEADINGS** on all parties against whom relief is sought and those otherwise entitled to service pursuant to the FED. R. BANKR. P. and these L.B.R. at the following addresses:

Lawrence R. Hill
12835 E. Arapahoe Rd.
Tower I, Suite 200
Centennial, CO 80112-3940


*/s/ Nancy L. Schacht*
Nancy L. Schacht